# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 19, 2015        Decided May 22, 2015

No. 14-1079

GORDON BRENT PIERCE,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

On Petition for Review of an Order of
the Securities & Exchange Commission

*Christopher B. Wells* argued the cause for petitioner. With him on the briefs were *David C. Spellman*, *Juan Marcel Marcelino*, and *Madeleine M. Blake*.

*Benjamin L. Schiffrin*, Senior Litigation Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Michael A. Conley*, Deputy General Counsel, *John W. Avery*, Deputy Solicitor, and *Benjamin M. Vetter*, Senior Counsel.

Before: MILLETT, *Circuit Judge*, EDWARDS, *Senior Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

EDWARDS, *Senior Circuit Judge*: This case emanates from two separate enforcement actions initiated by the

Securities and Exchange Commission ("SEC" or "Commission") against Petitioner Gordon Brent Pierce. In each action, the SEC found that Pierce had violated, *inter alia*, Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Act"), 15 U.S.C. § 77e(a), (c), by selling unregistered securities. Pierce was ordered to cease and desist from violating the Act and to disgorge all ill-gotten gains. He now petitions for review of the SEC's order in the second enforcement action and the agency's subsequent order denying his motion for reconsideration, principally on the ground that the second action was barred by res judicata.

The record indicates that Pierce sold shares of stock in Lexington, Inc. through offshore bank accounts located in Liechtenstein for millions of dollars in profit. He failed to comply with the SEC's registration requirements for the sale of securities. He transferred the stock through an account in his own name (the "personal account"), and in two separate accounts in the names of corporate entities (the "corporate accounts"). Pierce was the owner of the beneficial assets in the corporate accounts. During the investigation by the SEC's Division of Enforcement ("Division"), Pierce lied about and concealed his interest in the corporate accounts and the sales of stock through those accounts. As a result, when it initiated the first enforcement action, the Division only sought disgorgement of unlawful profits from the personal account.

After the close of the evidence in the hearing before the Administrative Law Judge ("ALJ") in the first enforcement action, the Division received documents from the financial regulator in Liechtenstein regarding Pierce's unlawful sales of stock through the corporate accounts. The Division filed a motion to include this evidence in the hearing before the ALJ and to seek disgorgement of profits on the basis of these additional violations. The ALJ, however, declined to expand

the charges in the first enforcement action. The ALJ held that Pierce had violated the Act based on the unregistered sales of Lexington stock through the personal account and ordered disgorgement of illegal profits from those sales. Neither side sought review, so the ALJ's decision became a final action of the SEC.

The Division subsequently initiated a second enforcement action, charging Pierce with violations of the Act based on unregistered sales through the corporate accounts and seeking additional disgorgement of unlawful profits. Pierce did not contest the pertinent facts giving rise to the charges in the second enforcement action. Instead, he raised several affirmative defenses: res judicata, judicial estoppel, equitable estoppel, and waiver. The Commission rejected each of these defenses.

In his petition for review, Pierce has presented a number of arguments to the court. His principal claims are: first, the second enforcement action was barred by res judicata because the charges in the first and second enforcement actions both drew on the same series of connected transactions and on the same common core or nucleus of facts; and second, the SEC erred in applying the doctrine of fraudulent concealment. The SEC counters that, because each unregistered sale of stock is a separate violation of the Act, there was no identity between the causes of action in the first and second enforcement actions. Therefore, the Division was not barred from pursuing the second enforcement action. The Commission also contends that the evidence plainly shows that Pierce fraudulently concealed the evidence of the sales in the corporate accounts. On the record before the court, we agree with the Commission that res judicata has no application in this case, in no small part because of Pierce's fraudulent concealment. We also agree with the Commission that there is

no merit in Pierce's defenses of equitable estoppel, judicial estoppel, and waiver. Accordingly, we deny the petition for review.

## I. BACKGROUND

### A. *Regulatory Overview*

An enforcement action before the SEC is initiated by the issuance of an order instituting proceedings ("OIP"). *See* 17 C.F.R. § 201.101(a)(4), (7). The OIP must include: (1) the nature of the proceedings, (2) the jurisdiction and legal authority supporting the action, (3) a short and plain statement of the matters of fact and law to be considered and determined, and (4) the nature of any relief or action sought or taken. *Id.* § 201.200(b).

An ALJ presides over a hearing regarding the charges in the OIP and issues an initial decision that includes the ALJ's "[f]indings and conclusions, and the reasons or basis therefor, as to all the material issues of fact, law, or discretion presented on the record and the appropriate order, sanction, relief, or denial thereof." *Id.* § 201.360(b). If no party seeks the Commission's review of the ALJ's initial decision within 21 days after it is issued, it becomes the final decision of the Commission. *See id.* § 201.360. The Commission's Rules of Procedure provide that only the Commission may amend an OIP to include new matters of fact or law beyond the scope of the original OIP. *Id.* § 201.200(d)(1). An ALJ may amend an OIP to include new matters of fact or law, but only if these matters are within the scope of the original OIP. *Id.* § 201.200(d)(2).

**B.** *The Facts*

It is unnecessary for us to offer an overly detailed statement of facts explaining the Lexington scheme and Pierce's conduct in violating the Act. As noted above, these facts are not in dispute and are fully set forth in the SEC's decisions in this case. *In re Lexington Resources, Inc.*, S.E.C. Release No. 379, 2009 WL 1684743 (June 5, 2009) ("*First Proceeding*"), *adopted by the SEC sub nom In re Gordon Brent Pierce*, S.E.C. Release No. 9050, 2009 WL 1953717 (July 8, 2009); *In re Gordon Brent Pierce*, S.E.C. Release No. 9555, 2014 WL 896757 (March 7, 2014) ("*Second Proceeding*"). Because the procedural background of this case is central to Pierce's petition for review, however, we offer a complete picture of the proceedings before the SEC.

\* \* \* \*

The SEC began its investigation into trading in Lexington stock in 2006. With respect to Pierce's fraudulent concealment of evidence during the investigation, the Commission found that during sworn testimony before the Division, he admitted that he had "an interest" in one of the corporate accounts (the "Newport account"), but denied having any interest in the second corporate account (the "Jenirob account"). *Second Proceeding*, 2014 WL 896757, at *4. Pierce was also asked if he had traded Lexington securities in any accounts other than the Newport account. He answered no, "effectively denying that he had traded Lexington securities for Jenirob." *Id.* The Division also issued an investigative subpoena, requiring Pierce to produce "[a]ll documents reflecting or relating to . . . transactions by you in Lexington stock. 'You' was defined to include 'any person or entity acting on [Pierce's] behalf.'" *Id.* (alterations in original) (emphasis omitted). Pierce's response did not include any

records showing trading activity in Lexington stock through the corporate accounts. *Id.*

As it turned out, the truth was quite different from what Pierce initially told SEC investigators.

> In 2003, Pierce opened a personal brokerage account (the "Personal Account") at Hypo-Alpe Adria Bank of Liechtenstein ("Hypo Bank"). Hypo Bank, in turn, opened an omnibus account (the "Hypo Omnibus Account") at vFinance Investments, Inc., a U.S. broker-dealer ("vFinance"). Newport and Jenirob also had brokerage accounts with Hypo Bank (respectively, the "Newport Account" and the "Jenirob Account"; together, the "Corporate Accounts"). Pierce was the beneficial owner of the assets in the Corporate Accounts. Through the Hypo Omnibus Account, Hypo Bank could trade securities for any of these customers without disclosing the identity of the owner of the securities in any particular trade.
>
> . . . .
>
> As of February 2, 2004, Newport held 1,935,589 shares of Lexington stock. In May 2004, 435,000 Lexington shares were issued to Jenirob. Pierce sold approximately 1.6 million Lexington shares from the Corporate Accounts, through the Hypo Omnibus Account at vFinance, between February 2004 and December 2004. The Division calculated the profits from these sales to be $7,247,635.75.

*Id.* at *3.

Before initiating the first enforcement action against Pierce, SEC investigators tried without success to determine the full extent of Piece's holdings and dealings in Liechtenstein.

> In late 2006, the Division asked the securities regulator in Liechtenstein, the Finanzmarktaufsicht (the "FMA"), for records of Hypo Bank that would identify, among other things, the customers for which Hypo Bank was selling Lexington stock. The FMA informed the Division that it could not obtain the requested documents for the Division. But in late 2007, the Division learned that the FMA was working to amend Liechtenstein law to provide the FMA additional powers that could potentially allow it to obtain documents for the Division. The Division therefore sent the FMA an additional request for documents on February 20, 2008.

*Id*. at *4 (footnote omitted).

On July 31, 2008, not knowing when, if ever, the FMA would be able to produce documents responsive to its request, the Division issued an OIP in the first enforcement action. This OIP alleged that Pierce violated the sales registration requirements of the Act when he sold Lexington stock through his personal account at the offshore bank. The OIP also alleged violations of Sections 13(d) and 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d)(1) and 78p(a), and rules thereunder, based on Pierce's failure to report his greater than 10% ownership in Lexington stock and on his failure to report changes in ownership in Lexington stock as he was trading shares. *Id.* at *5.

After the close of evidence presented to the ALJ in the first enforcement action, the FMA finally produced

documents responsive to the Division's request. These documents showed sales of Lexington stock through the corporate accounts and revealed that Pierce was the beneficial owner of the assets in the corporate accounts. *Id.* The Division moved to admit the newly discovered documents and sought additional disgorgement of profits from the corporate accounts. In ruling on the motion, the ALJ stated that she lacked authority to "expand the scope of matters set down for hearing beyond the framework of the original OIP." *First Proceeding*, 2009 WL 1684743, at *21. She therefore refused to admit the evidence for purposes of establishing additional violations or disgorgement of unlawful profits from the trading through the corporate accounts. *See id.* The ALJ admitted the evidence for two limited purposes related solely to the charges in the first OIP. *Second Proceeding*, 2014 WL 896757, at *12.

The ALJ's initial decision ordered Pierce to disgorge over $2 million in illegal profits based on trading from the personal account. *Id.* at *7. The ALJ "made no findings of liability regarding § 5 violations based on trading in the Corporate Accounts, and she did not order disgorgement of trading proceeds from transactions in those accounts." *Id.* Neither party sought review of the ALJ's decision, so it became the final decision of the Commission on July 8, 2009. *In re Gordon Brent Pierce*, 2009 WL 1953717.

The Division subsequently issued a second OIP against Pierce, charging him with violations of the Act based on his unregistered sales of Lexington stock through the corporate accounts and seeking disgorgement of unlawful profits from those sales. *Second Proceeding*, 2014 WL 896757, at *7. Pierce admitted the pertinent facts and allegations in the second OIP, including his beneficial ownership in the corporate accounts, his sales of Lexington stock through those

accounts, and that his conduct violated the Act. *Id.* However, he raised the affirmative defenses of res judicata, equitable estoppel, judicial estoppel, and waiver. *Id.*

Pierce's chief argument during the second enforcement action was that the charges in the second OIP were barred because they had already been asserted during the first enforcement action. The Commission found otherwise, stating in relevant part:

> Although the First OIP alleged that Lexington shares were transferred to Newport or Jenirob and referred to sales from the Hypo Omnibus Account, that was not enough to state a claim against Pierce based on unregistered sales from the Corporate Accounts, or to calculate the potential disgorgement from those sales. Thus, the only § 5 violations put at issue by the First OIP were Pierce's $2.7 million in unlawful sales through the Personal Account.

> . . . .

> We also reject Pierce's argument that the Division's request for disgorgement of trading proceeds from the Corporate Accounts in its post-hearing brief placed § 5 liability for sales from those accounts at issue in the First Proceeding. The Division sought that result, but the law judge refused to allow it because the § 5 liability for those sales was beyond the scope of that proceeding. . . . [S]he ruled that no request for additional disgorgement would be entertained because disgorgement based on sales from the Corporate Accounts would be outside the scope of the First OIP. Thus, despite the Division's attempts to obtain disgorgement for the trading proceeds from the Corporate Accounts in the First Proceeding, the

law judge ruled against the Division on the grounds that such a request was not part of that proceeding and that she did not have authorization to add it.

*Id.* at \*11–12.

The Commission held that res judicata did not bar the second proceeding because the second proceeding arose from distinct violations of the Act. *Id.* at \*13. The Commission went on to hold that, even if res judicata might normally apply, Pierce's fraudulent concealment of the evidence of his unlawful trading through the corporate accounts prevented any application of res judicata in this case. *Id.* The Commission also rejected Pierce's additional affirmative defenses of equitable estoppel, judicial estoppel, and waiver. *Id.* at \*19–22.

## II. ANALYSIS

### A. *Standards of Review*

Pursuant to the Administrative Procedure Act, the Commission's legal conclusions are set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Rapoport v. SEC*, 682 F.3d 98, 103 (D.C. Cir. 2012). "The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive." 15 U.S.C. § 78y(a)(4).

In its brief to this court, Pierce argues at length that the Commission's decision is fatally flawed because it is founded on a misguided theory of res judicata. The SEC ruled that res judicata did not apply because the first and the second proceedings did "not involve the same cause of action," did not arise from the same "transaction or connected series of

11

transactions," and did not need "the same evidence . . . to support both claims." *Second Proceeding*, 2014 WL 896757, at *9–10. Parts of the SEC's decision appear to rely on legal precepts enunciated in distinguishable case law. *See, e.g.*, *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463–64 (2d Cir. 1996) (second proceeding not barred by res judicata where unlawful transactions at issue in the second proceeding had not yet occurred at the time the first proceeding was being adjudicated). Also perplexing is that the Commission initially invoked its discretion, as an administrative agency, to apply the doctrine of res judicata with flexibility. *Second Proceeding*, 2014 WL 896757, at *9. In response to Pierce's petition for reconsideration, however, the SEC appeared to change its position. *In re Gordon Brent Pierce*, S.E.C. Release No. 9584, 2014 WL 1998514, at *3 (May 15, 2014) ("Although the Opinion recognizes that res judicata can apply more flexibly in the administrative context, the Opinion's application of res judicata in this proceeding is entirely consistent with the application of res judicata in the federal courts."). It is not entirely clear that the Commission's disposition rests on principles of res judicata that are "entirely consistent with the application of res judicata in the federal courts," but this is a matter of no consequence in this case.

It is well understood in administrative law that a reviewing court will uphold an agency action resting on several independent grounds if any of those grounds validly supports the result. *See, e.g.*, *Carnegie Natural Gas Co. v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992). A reviewing court may not supply a reasoned basis for an agency action that the agency itself did not give in the record under review. *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 93–94 (1943). However, if an agency has justified an order on alternative grounds, one of which is dispositive, the reviewing court may uphold the agency action. In other words, the point is that if

the result in a case is obvious, based on the record before the court and the rationale offered by the agency, "the best course is for the reviewing court to simply apply the obvious result." *American Fed'n of Gov't Employees v. FLRA*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985); *see also* Merrick B. Garland, *Deregulation and Judicial Review*, 98 Harv. L. Rev. 505, 570–71 (1985) (vacating and remanding is not a logical response where there is only one conceivable outcome). We do not quibble with an agency because we do not agree with every ground upon which it has justified its decision.

The SEC found that Pierce's fraudulent concealment of the evidence leading to the charges in the second enforcement action precluded the application of res judicata. This determination is based on substantial evidence; it is consistent with established law; and it independently and conclusively supports the Commission's order in this case. Therefore, we need not address Pierce's disagreements with the SEC over whether there was sufficient identity between the causes of action in the first and second enforcement actions to warrant the application of res judicata. Pierce does not contest the fraudulent concealment exception to res judicata. He simply disagrees with the Commission's determination that he engaged in fraudulent concealment. As we explain below, because we find no error in the SEC's application of the fraudulent concealment exception, we deny the petition for review.

## B. *The Fraudulent Concealment Exception*

"[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof." *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc). Pierce has not discharged his burden with respect to his claim that the Commission

erred in determining that he fraudulently concealed the evidence supporting the second enforcement action.

The Supreme Court has recognized the application of the doctrine of res judicata in administrative proceedings. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966). "[N]ewly discovered evidence normally does not prevent the application of res judicata." *Guerrero v. Katzen*, 774 F.2d 506, 508 (D.C. Cir. 1985) (emphasis omitted). However, as we have made clear, "[e]xceptions to this general principle occur when evidence is either fraudulently concealed or when it could not have been discovered with due diligence." *Id.* The former exception is recognized in the Restatement. RESTATEMENT (SECOND) OF JUDGMENTS § 26, cmt. j (1982) ("A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud."). Courts have broadly adopted the rule that "the doctrine of res judicata will not shield a blameworthy defendant from the consequences of his or her own misconduct." 47 AM. JUR. 2d *Judgments* § 537 (2006) (citing cases).

Although Pierce "maintains that he did not fraudulently conceal any facts from the Commission" and "also maintains that the Division was not diligent in attempting to uncover the facts underlying the Second Proceeding," Br. of Petitioner 33 n.37, he does not object to the Commission's findings that he lied in his investigative testimony and omitted information requested by the Division's subpoena. *See Second Proceeding*, 2014 WL 896757, at *4. Rather, he argues that, "even assuming [that his] actions amounted to fraudulent concealment . . . any concealment ultimately failed [because the] Division captured the cause of action and supporting evidence in time to seek disgorgement in the First Proceeding." Br. of Petitioner 32. In Pierce's view, "[t]he

claim was not fraudulently concealed. It was asserted." *Id.* at 46. We disagree.

Contrary to Pierce's assertions, the Commission found that the Division could not charge the violations relating to the unlawful trading in corporate accounts in the first enforcement action because Pierce had fraudulently concealed the evidence. As the SEC stated, "because of lies and omissions in" Petitioner's response to the investigative subpoena and in his testimony, "the Division could not support the allegations necessary to establish its prima facie case" of liability for unlawful sales through the corporate accounts. *Second Proceeding*, 2014 WL 896757, at *14. Accordingly, the SEC found that Pierce fraudulently concealed the evidence. *Id.* at *13. The Commission noted that, "[t]o find otherwise would reward Pierce for his duplicitous conduct." *Id.*

Moreover, the SEC's Rules of Procedure make it clear that the OIP – and not any motion, brief, or other filing by the Division – establishes the scope of the charges in SEC enforcement proceedings. 17 C.F.R. § 201.200(b)(3) ("The order instituting proceedings shall . . . [c]ontain a short and plain statement of the matters of fact and law to be considered and determined[.]"). The SEC's Rules further provide that the ALJ may only admit "new matters of fact or law that are within the scope of the original order instituting proceedings." *Id.* § 201.200(d)(2); *see also* Rules of Practice, 60 Fed. Reg. 32738, 32757 (June 23, 1995) (adopting revisions to SEC's Rules of Practice) ("[ALJs] do not have authority to initiate new charges or to expand the scope of matters set down for hearing beyond the framework of the original order instituting proceedings.").

Therefore, Pierce's assertion that the "cause of action" in the second enforcement action "was actually asserted in *briefs* . . . in the first case," Br. of Petitioner 33 (emphasis added), is completely off the mark. The mention of the belatedly discovered unlawful trading in corporate accounts after the close of the evidence in the first enforcement action did not indicate that the charges filed in the second enforcement action were a part of the first enforcement action.

Furthermore, the Division's motion to admit the belatedly discovered evidence and to seek disgorgement from the corporate accounts did not put those charges at issue in the first enforcement action. The ALJ in the first action found that the unregistered sales of Lexington stock through the corporate accounts were outside the scope of the first OIP and that she lacked authority to expand the scope of the OIP to hear the additional allegations. *First Proceeding*, 2009 WL 1684743, at *21. Pierce does not challenge as erroneous the ALJ's determination that any liability or disgorgement based on the corporate accounts trading was outside the scope of the first OIP.

In sum, Pierce's assertion that the charges arising from the unlawful sales of Lexington stock out of the corporate accounts were "actually asserted" in the first proceeding is specious. The Division did not obtain the pertinent information regarding Pierce's unlawful trading through the corporate accounts until after the record had been closed in the first enforcement action. The fact that reference was made to the corporate accounts proves nothing because it was too late for the Division to include the charges in the OIP. Thus, there is no merit to Pierce's argument that the Commission could not rely on the fraudulent concealment exception to foreclose the application of res judicata in the second enforcement action.

Pierce also argues that the Division was required to "formally seek[] an amendment," Br. of Petitioner 38, or to expressly reserve the charges of unregistered sales through the corporate accounts in the first enforcement action, *id.* at 41 (citing the RESTATEMENT § 26(1)(b)). He protests that the Division did not "follow[] the rules" when it failed to take additional steps to preserve the charges related to the corporate accounts after the ALJ refused to admit the additional charges. *Id.* at 38. Pierce's argument lacks any legal basis.

First, and tellingly, the Division was within its authority to pursue the second enforcement action because the basis for the action was not subsumed in the first enforcement action. The two actions were separate because they were based on distinct acts of wrongdoing. As the Commission pointed out, the "[r]egistration of a security is transaction-specific, in that the requirement of registration applies to each act of offering or sale," and thus each failure to register sales of Lexington stock was a separate violation. *Second Proceeding*, 2014 WL 896757, at *10 (internal quotation marks omitted). Moreover, it does not matter that the same evidence that was used in the first proceeding might also be relevant to prove separate violations in the second proceeding. Counsel for Pierce conceded both of these points at oral argument. Oral Argument at 5:27–6:41. Counsel also agreed that the SEC – in carrying out its enforcement duties – has authority to file charges for individual violations separately and has no obligation to join them. *Id.* at 8:10–8:20.

In addition, the Division was under no obligation to seek interlocutory review of the ALJ's ruling on the motion to admit additional evidence. Indeed, there is good reason why it did not, as the Commission's rules state that "[p]etitions by

parties for interlocutory review are disfavored, and the Commission ordinarily will grant a petition to review a hearing officer ruling prior to its consideration of an initial decision only in extraordinary circumstances." 17 C.F.R. § 201.400(a).

The Commission also explained why, in the context of administrative enforcement proceedings, it is undesirable to require the Division to expend resources in seeking to amend the OIP to add additional charges while a prior action is pending. Judges in the federal courts have discretion to permit parties to amend and supplement pleadings. "[I]n contrast," the ALJ "lacks the authority to amend an OIP to include matters outside its original scope; expanding the scope of the OIP requires action by the Commission." *Second Proceeding*, 2014 WL 896757, at *18. The Commission further explained that an interlocutory appeal to amend the first OIP would have resulted in delay, which would run counter to the enforcement agency's goal to swiftly address violations of the securities laws. *Id.* at *18–19.

In conclusion, we find no merit in Pierce's objections to the SEC's application of the fraudulent concealment doctrine. We want to be clear, however, about the reach of our decision in this case. First, we do not face a situation here where the OIP in the first enforcement action subsumed the charges brought in the second action. Second, we express no view on what the outcome might have been if the evidence regarding the corporate accounts had been provided to the SEC before the first OIP was issued. We leave the possible issues relating to these scenarios for another day. Here, Pierce's conduct in concealing the additional sales of Lexington stock through the corporate accounts had the intended consequence of preventing the Division from including those charges and seeking disgorgement of the additional unlawful profits in the

first proceeding. Under these circumstances, we find no error, let alone arbitrary or capricious action, in the Commission's ruling that Pierce could not use res judicata to avoid the consequences of his own misconduct.

## C. *Petitioner's Other Arguments*

The Commission also rejected Pierce's affirmative defenses of equitable estoppel, judicial estoppel, and waiver. Pierce raises these defenses again in his petition for review. We hold that the Commission correctly rejected each asserted defense.

A party asserting equitable estoppel against the government must show that "the government engaged in affirmative misconduct." *Keating v. FERC*, 569 F.3d 427, 434 (D.C. Cir. 2009) (internal quotation marks omitted). "Estoppel generally requires that government agents engage – by commission or omission – in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result." *GAO v. Gen. Accounting Office Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983). Pierce does not assert that the Government engaged in "misrepresentation or concealment." Thus, he does not establish the affirmative misconduct element of his equitable estoppel claim. Therefore, it is unnecessary for us to consider the remaining elements of equitable estoppel. *Keating*, 569 F.3d at 434 n.1 ("As Keating's claim to estoppel fails at this first step, we need not consider the remaining estoppel elements; our silence does not imply that he would be any more successful on those elements.").

Pierce also argues that judicial estoppel barred the Division from asserting the fraudulent concealment exception

to res judicata in the second proceeding. Br. of Petitioner 44. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). In support of this claim, Pierce contends that

> [t]he Division successfully opened the record and submitted the "unconcealed" FMA (Liechtenstein) evidence supporting its "unconcealed" $7.5 million claim in the First Proceeding. Later, in the Second Proceeding, the Division took the inconsistent position that fraudulent concealment had prevented assertion of the $7.5 million (Corporate Accounts) claim in the First Proceeding. Yet, the Division had actually asserted the unconcealed claim in the First Proceeding, the ALJ denied the claim, and the ALJ signaled the Division to ask the Commission to disgorge, or delegate to the ALJ the authority to disgorge, the additional $7.5 million. The Division, however, did not heed the ALJ's warning and now backtracks to assert the inconsistent claim that fraudulent concealment of material facts prevented the Division from the [sic] asserting the claim in the First Proceeding.

Br. of Petitioner 45–46 (footnote omitted). This argument makes no sense.

The ALJ denied the Division's request to expand the charges in the first enforcement action. Thus, Pierce's fraudulent concealment of material facts effectively precluded the Division from pursuing the charges relating to the corporate accounts in the first enforcement action. When the Division belatedly sought to amend the OIP in the first enforcement action, it assuredly did not argue that there had

been no fraudulent concealment. And when the ALJ ruled that she lacked authority to "expand the scope of matters set down for hearing beyond the framework of the original OIP," *First Proceeding*, 2009 WL 1684743, at *21, she certainly did not address the fraudulent concealment issue. In short, there is nothing to indicate that the Division prevailed in the first enforcement action on an argument related to fraudulent concealment and then relied on a contradictory argument to prevail in the second enforcement action.

Finally, Pierce contends that the SEC erred in concluding that the Division did not waive a claim for additional disgorgement in the first enforcement action. On this point, Piece maintains that the Division effectively "abandoned the option of a separate action when it moved to admit the new evidence" at the conclusion of the first enforcement action. Br. of Petitioner 47. In other words, Pierce again argues that the Division's charges relating to the corporate accounts were "actually litigated" in the first enforcement action and, therefore, could not be raised again in the second enforcement action. We need not tarry over this argument. As noted above, the charges in the second enforcement action indisputably were not litigated in the first action. Therefore, the SEC was not precluded from pursuing the second action on the basis of the fraudulently concealed evidence.

### III. CONCLUSION

For the reasons set forth above, the petition for review is denied.

*So ordered.*